NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 6 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HARVEY YAZZIE,

Plaintiff - Appellant,

v.

UNITED STATES OFFICE OF NAVAJO
AND HOPI INDIAN RELOCATION,

Defendant - Appellee.

No. 24-5528

D.C. No. 3:23-cv-08510-JAT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted September 15, 2025
Phoenix, Arizona

Before: COLLINS, MENDOZA, and DESAI, Circuit Judges.

Plaintiff Harvey Yazzie brought this suit under the Administrative Procedure

Act ("APA") seeking judicial review of an administrative decision by the Office of

Navajo and Hopi Indian Relocation ("ONHIR") determining that he was not

eligible for relocation benefits under the Navajo Hopi Land Settlement Act of

1974, Pub. L. No. 93-531, 88 Stat. 1712 (Dec. 22, 1974), as amended ("the

Settlement Act").  The district court granted summary judgment to the ONHIR,

and Yazzie has timely appealed.  We have jurisdiction under 28 U.S.C. § 1291.

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

We review the district court's decision *de novo*. *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989). Under the APA's standards, "we review ONHIR's decision to determine whether it was 'arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence.'" *Barton v. Office of Navajo and Hopi Indian Relocation*, 125 F.4th 978, 982 (9th Cir. 2025) (citation omitted). We reverse and remand.

To be eligible for relocation benefits, a Navajo or Hopi applicant must have been (1) a "resident[]" on December 22, 1974 of an area partitioned to the other tribe, 25 C.F.R. § 700.147(a); and (2) a resident head of household as of the time he or she moved from the land partitioned to the other tribe, except that the date cannot be later than July 7, 1986, *id*. §§ 700.69(c), 700.147(e). The regulations confirm that "[r]esidence" means "legal residen[ce]," *id*. § 700.97(a), and that the "burden of proving residence and head of household status is on the applicant," *id*. § 700.147(b).[1]

---

[1] In the amendments made to the regulations in 1984, the concept of "legal residence" was adopted as the standard for "residence" in lieu of the prior regulatory definition, which specifically required either "[o]ccupancy" or "[m]aintenance of substantial recurring contacts." *See* 49 Fed. Reg. 22277, 22278 (May 29, 1984); 25 C.F.R. § 700.97 (1983); *Bedoni*, 878 F.2d at 1123 (holding that the pre-1984 regulation relied on a federal definition of residency that preempted use of the state law concept of legal residence); *id*. at 1122 (noting that we decided the case under the "federal regulations in effect at the time of [the appellant's] application," which was filed before December 1979). In the absence of any conflict with federal interests, we therefore look to the law of Arizona—which is the only state within which the Settlement Act is applicable—in construing the legal residence standard adopted in the post-1984 regulation.

As relevant here, the Independent Hearing Officer ("IHO") determined that Yazzie became a head of household on September 15, 1976, when his first son was born, and Yazzie does not challenge that determination on appeal. The IHO rejected Yazzie's contentions that, on both December 22, 1974 and September 15, 1976, he resided at his Navajo family's homesites in Coalmine, within lands partitioned to the Hopi tribe. Instead, the IHO held that on both dates Yazzie was a resident of Tuba City, on Navajo land.

Substantial evidence does not support the IHO's conclusion that Yazzie was a resident of Tuba City on December 22, 1974. Yazzie was a legal resident of Coalmine by virtue of his parents' legal residence there until he turned 18, *see Hughes v. Industrial Comm'n*, 211 P.2d 463, 466 (Ariz. 1949) (stating that a child's "residence is that of his parents"), and "[a] domicile once acquired continues until a new one is acquired," *In re Webb's Adoption*, 177 P.2d 222, 224 (Ariz. 1947). Whether Yazzie acquired legal residence elsewhere before December 22, 1974 "requires an examination of [his] intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22277, 22277 (May 29, 1984); *see also Barton*, 125 F.4th at 983 (holding that an applicant who is temporarily away from an area for education or employment purposes may establish residence through evidence of intent to reside or manifestations of that intent).

Yazzie's temporary residence in Tuba City for the purposes of attending an

3

out-of-town school does not, without more, defeat his claim that he was a legal resident of Coalmine. *See Arizona Bd. of Regents v. Harper*, 495 P.2d 453, 459–61 (Ariz. 1972). Moreover, the IHO found that Yazzie earned no income in 1974 (meaning that he did not work in Tuba City during the summer) and that Yazzie left Tuba City to attend Diné College (then called Navajo Community College) in the fall of 1974. During this time, Yazzie continued to make periodic visits to Coalmine. On this record, substantial evidence does not support the conclusion that Yazzie had acquired legal residence in Tuba City by December 22, 1974. *See Lake v. Bonham*, 716 P.2d 56, 58 (Ariz. Ct. App. 1986) (stating that, to change domicile, there must be "an intent to abandon the former domicile and remain [in the new location] for an indefinite period of time" (citation omitted)).

The IHO's analysis of Yazzie's residence on September 15, 1976 is also not supported by substantial evidence. In concluding that Yazzie had acquired residence in Tuba City by the time his first child was born on that date, the IHO relied on the conclusion that Yazzie "lived and claimed that he worked" there and that the mother of his child "was a lifelong resident of Tuba City." However, the IHO simultaneously concluded that Yazzie's testimony that he began working in Tuba City during the summer of 1976 was not credible, inasmuch as his social security records for that year reflected no earnings. We have previously held that an IHO decision is not supported by substantial evidence when, without adequate

4

explanation, the IHO simultaneously credits testimony for one purpose while discrediting the same testimony for another purpose. *Fuson v. Office of Navajo & Hopi Indian Relocation*, 134 F.4th 1010, 1016 (9th Cir. 2025). Accordingly, the IHO's decision on Yazzie's residence as of September 1976 must be set aside and the matter remanded to the agency for reconsideration. On remand, the IHO must reconsider any credibility determination concerning Yazzie's testimony, make clear and internally consistent findings as to the facts concerning Yazzie's actions during 1976, and explain how those findings support a conclusion as to Yazzie's residence as of September 15, 1976.

On remand, the IHO must also reconsider his conclusory and inadequately explained negative credibility determinations as to Yazzie's other witnesses. We have held that "when an IHO's decision rests on a negative credibility evaluation, he must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Fuson*, 134 F.4th at 1016 (citation and emphasis omitted). Under that standard, the IHO's analysis of these witnesses' credibility falls short.

We therefore reverse the district court's grant of summary judgment for the ONHIR and remand to the district court with instructions to remand the matter to the agency for further proceedings consistent with this memorandum.

**REVERSED AND REMANDED.**